IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROSLYNN ANGEL, | ) | CIVIL NO. 09-00361 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | WAL-MART STORES, INC.'S |
| vs. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT AS TO COUNTS I-VI |
| WAL-MART STORES, INC., a | ) | |
| Delaware Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT WAL-MART STORES, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I-VI

## I. INTRODUCTION

On May 22, 2009, Plaintiff Roslynn Angel ("Plaintiff") filed this action alleging various state law claims against her former employer Defendant Wal-Mart Stores, Inc. ("Wal-Mart" or "Defendant"), stemming from her termination, which occurred several months after the local newspaper published a letter she wrote criticizing Wal-Mart for raising the minimum wage, and directly after her managers found that she had violated Defendant's policy regarding confidentiality of employee complaints and she refused to accept coaching.

Currently before the court is Defendant's Motion for Summary Judgment on all claims, in which it argues that Plaintiff's claims are not cognizable as a matter of law and/or are not supported by any evidence. Based on the

following, the court GRANTS Defendant's Motion for Summary Judgment.

## II. BACKGROUND

**A.    Factual Background**

### 1.    *Plaintiff's Employment with Defendant*

On October 10, 1996, Plaintiff submitted an application for

employment with Defendant. *See* Horiuchi Decl. Def.'s Ex. A, Angel Depo. Ex.

24. The application included the following statement, which Plaintiff initialed:

> I understand that this application is not a contract, offer,
> or promise of employment and that if hired I will be able
> to resign at any time for any reason. Likewise, the
> company can terminate my employment at any time with
> or without cause. I further understand that no one other
> than the President of Wal-Mart Stores, Inc. or Vice
> President of its People Division has the authority to enter
> into an employment contract or agreement with me, and
> that my at-will employment can be changed only by a
> written agreement signed by the President of Wal-Mart
> Stores, Inc. *I have read, understand, and agree to this
> statement (please initial here)* _____

*Id.* Defendant subsequently hired Plaintiff, and throughout her employment

Defendant reiterated, and Plaintiff acknowledged, that her employment was at-will.

*See id.* at Exs. 18, 22, 23. Further, no individuals at Wal-Mart ever made any

verbal promises to Plaintiff regarding her length of employment or the reasons for

which Wal-Mart could terminate Plaintiff. *See id.* at 139:17-140:8.

By the time of her termination, Plaintiff held the position of

Department Manager in sporting goods, supervising five or six employees.  *Id.* at

11:17-12:2.  As Department Manager, Plaintiff scheduled shifts for employees,

provided input for employees' performance reviews, and participated in verbal

counseling.  *Id.* at 42:2-43:21.

### 2.      *Events Leading to Plaintiff's Termination*

Plaintiff was terminated on May 23, 2007.  Although Plaintiff has not

presented any evidence,[1] Plaintiff apparently asserts that she was terminated for

writing a letter to the editor of the Hawaii Tribune-Herald, which was published on

March 1, 2007.  *Id.* at 106:9-21, 147:5-17.  Plaintiff's letter states, among other

things:

> Let's glorify Wal-Mart.  They have low prices, do
> a lot for the community (I do give them that much), good
> return policy and . . . ?  OK, reality time.  Wal-Mart just
> raised their minimum wage to $10 an hour here in Hilo,
> and distributed raises to the fortunate ones to bring them
> up to the minimum.
>
> Who am I to give my opinion?  I am one of the
> many employees who disagree with the unfair pay
> practice. . . .  I am one, like many others, who got
> bypassed twice on pay increases.  I am not a disgruntled
> worker.  I am a 10-year veteran of Wal-Mart.  I am a
> department manager who has exceeded on my evaluation,
> and is tired of getting the shaft, from pay caps to merit
> raises that have been taken away. . . .

---

[1] Plaintiff submitted a four-page Opposition, but failed to present any evidence or respond to Defendant's Concise Statement of Facts.

*Id.* Ex. 12.

In contrast, Defendant asserts that Plaintiff was terminated after she breached Wal-Mart's "Open Door Communications" policy and then refused to accept coaching for the policy violation.  Defendant's Open Door Communications policy provides, among other things:

> All Associates (salaried and hourly) may have Open Door discussions concerning all matters pertaining to Wal-Mart.  The purpose of the Open Door is to bring your suggestions, observations, problems, or concerns regarding the Company or yourself to the attention of any supervisor or salaried member of management.
> . . .
> All issues discussed will be treated confidentially and impartially.  Every Associate (salaried and hourly) is assured that each issue, concern or suggestion will be given priority consideration and addressed in a manner best suited to resolve the matter satisfactorily.
> . . .
> Concerns, comments, complaints, etc. raised through the Open Door will be treated with confidentiality and respect.  Specific information concerning the matter **may not** be disclosed to anyone not directly involved in resolving the issue.  Only those having a need to know may be made aware of, or consulted about, the situation.
>
> Wal-Mart will investigate Open Door issues in a timely manner.  A thorough investigation is required to determine the facts surrounding the issue or concern raised.  This should be done by an individual not alleged to be a part of the Open Door Issue or concern, preferably a salaried member of management.
> . . .

4

> Any supervisor or salaried member of management who:
> . . .
> •      discloses confidential information pertaining to the
>         issue raised or the result to anyone not having a
>         need to know; or
> •      retaliates or causes an Associate to be retaliated
>         against for using the Open Door process . . . .
> **has engaged in misconduct that may result in**
> **disciplinary action up to and including termination.**

*Id.* at Ex. 16.

This policy came into issue after Assistant Manager Marc Hashimoto

("Hashimoto") met with Plaintiff on April 25, 2007 to notify her that an employee

had raised a concern that Plaintiff took her breaks with Jen Nobriga, an employee

she supervised.  *Id.* at 8:12-23, 9:22-10:15, 12:12-14, 16:10-17:2; *id.* Ex. 1 at

ANGEL000055.  Plaintiff explained that she took her breaks with Nobriga for

safety issues,[2] *see id.* Ex. 1 at ANGEL000055, and Hashimoto responded that she

did not need to explain further.  *Id.* at ANGEL000056.

Hashimoto nonetheless raised this issue again with Plaintiff on April

27, 2007.  *Id.* at 25:1-5; *id.* Ex. 1 at ANGEL000056.  Hashimoto explained that a

person in Plaintiff's department had shared in confidence that he was

"uncomfortable and has the concern because it didn't look right, and other issues

---

[2] Specifically, Plaintiff told Hashimoto that she took her breaks with Nobriga because
her ex-husband had tried to run her over in the Wal-Mart parking lot and she had a temporary
restraining order against him.  Horiuchi Decl. Pl.'s Ex. A, Angel Depo. Ex. 1 at ANGEL000055.

came up about [Plaintiff's] scheduling and so on." *Id.* Ex. 1 at ANGEL000056.

Plaintiff pressed Hashimoto for the name of the person raising this concern, and

Hashimoto revealed the employee as Chad Asato ("Asato"). *Id.* In response,

Plaintiff told Hashimoto that he could share with Asato her reason for taking

breaks with Nobriga, and Hashimoto agreed. *Id.*

After learning of Asato's confidential complaint, Plaintiff approached

Asato in a store aisle, apologized to him for making him feel uncomfortable, and

explained why she took her breaks with Nobriga. *Id.* Ex. 3. In response, Asato

"looked at me in a funny way and said 'I no kea, it's all good, why somebody said

something?' and he started to get upset." *Id.* In response, Plaintiff told him to

relax and that she would talk to management. *Id.*; *see also* Def.'s Reply, Horiuchi

Decl. Ex. K, Asato Depo. 62:17-63:10; 69:5-17; 73:3-15 (stating that Plaintiff

discussed with Asato her reason for taking breaks with Nobriga).

On May 8, 2007, Store Manager Terrence Crowley ("Crowley")

conducted an "Open Door" meeting with Plaintiff. Crowley Decl. ¶ 3; *id.* Ex. B.

Plaintiff asserted that Hashimoto had lied to her regarding Asato raising concerns

about Plaintiff's breaks (based apparently on Asato's denial to her that he had not

complained). *Id.* ¶ 3; *id.* Ex. B. In response, Crowley informed Plaintiff that he

would interview Asato and Hashimoto, and then get back to Plaintiff. *Id.* ¶ 3; *id.*

Ex. B.  In his subsequent interview with Asato, in which Assistant Manager Burt

Takata ("Takata") was also present, Asato confirmed that he had raised concerns

about Plaintiff taking breaks with Nobriga and received confirmation from

Crowley that everything he said was confidential.  *Id.* ¶ 4; *id.* Ex. B.  Crowley also

spoke with Hashimoto, and based on his conversations formed the belief that

Hashimoto had not lied to Plaintiff.  *Id.* ¶ 3; *id.* Ex. B.  Crowley subsequently met

with Plaintiff on May 11, 2007, and informed her that he had spoken with

Hashimoto and Asato, and that the issue appeared resolved.  *Id.* ¶ 5.

After learning that Crowley had met with Hashimoto and Asato,

Plaintiff approached both Takata and Asato regarding their conversations with

Crowley.  Plaintiff "asked Takata if he sat with [Crowley] when he talked to Asato

on Tuesday.  [Takata] looked at me and said No. . . .  I told [Takata] that I needed

to know what was going on, because I felt [Crowley] was lying to me and covering

for [Hashimoto]."  Horiuchi Decl. Def.'s Ex. A, Angel Depo. Ex. 3.  Plaintiff also

told Asato that, "[y]ou know, [Crowley] said he talked to you on Tuesday," and

Asato responded, "[w]hat, wait I come back."  *Id.*  Plaintiff later saw Asato in

Crowley's office and noticed that when Asato left the office he was upset and left

work for the day.  *Id.*; Def.'s Reply, Horiuchi Decl. Ex. K, Asato Depo. 91:6-14;

100:19-101:21 (stating that after Plaintiff asked Asato about his meeting with

7

Crowley, Asato spoke with Crowley and was "shook up").

Plaintiff never asked Crowley for permission to speak with either Asato or Takata regarding this issue, and did not inform Crowley that she was going to speak with either of them.  Horiuchi Decl. Def.'s Ex. A, Angel Depo. 72:16-21; 72:22-25.  Crowley and Market Manager Brian Halsey believed that Plaintiff's conduct of questioning Asato and Takata was intimidating to Asato. Crowley Decl. ¶ 8.  They therefore reached the decision to issue Plaintiff a "Decision Day" coaching and remove her from her position as Department Manager.  *Id.*

On May 14, 2007, Crowley met with Plaintiff, informed her of the decision, and provided Plaintiff a "Coaching for Improvement" form.  *Id.* ¶ 9; *id.* Ex. F.  The form provides:

> Impact of Associate's Behavior:
> Dept. Mgr. Roslynn violated an associate's use of the Open Door policy, thus creating an atmosphere of intimidation and causing the associate extreme discomfort with being at work.  Dept. Mgr. Roslynn's actions caused a breakdown in the Open Door policy and lowered morale within the department.
>
> Behavior Expected of Associate:
> Roslyn is expected to follow and support all company policies, specifically an associate's right to use the Open Door policy without fear of intimidation.  Roslynn will be removed from her position of Dept Mgr and will need to update her career preference to select another position

8

> within the store.  As such Roslynn is expected to
> maintain a positive attitude to not affect the morale of
> other associates.

*Id.* Ex. F.

Crowley instructed Plaintiff to acknowledge the coaching, submit a

written action plan, and to change her career preference to select another position.

*Id.* ¶ 9.  Plaintiff testified that she understood Crowley's instructions and repeated

his instructions back to him.  Horiuchi Decl. Def.'s Ex. A, Angel Depo. 67:15-

68:1; *id.* Ex. 1, ANGEL000057.  Plaintiff subsequently went on sick leave and did

not return to work until May 22, 2007.  *Id.* Ex. 1, ANGEL000057.

When Plaintiff returned, she provided Crowley a letter stating:

> This letter is in reference to being pulled into the
> office by you and being accused of breaking the "open
> door policy."  Let me just clarify what you had said that I
> needed to do, even after I had said more than three times,
> that I didn't do what you are accusing me of doing.  I am
> given a "Decision Making Day" today (where I am to
> leave for the day with pay), I need to come back to work
> tomorrow 5/15/2007 with a letter stating, "What I am
> going to, do so this won't happen again," and then I have
> to go into the "Career Preference" on the computer and
> change my status, so I am no longer a Department
> Manager.
>     Like I said to you in your office, with Assistant
> Manager [Roberta Stringer] present, **I did not break any
> policy and I refuse to acknowledge that I did, for the
> sake of Wal-Mart**. . . .  As store manager to have this
> style of managerial skills, raises the question of
> retaliation on behalf of Wal-Mart, for the publication that

> I had done in the editorial of the local paper.  Since then,
> I have been a target on different issues that have been
> brought to my attention. . . .
>
>     To summerize [sic] this issue, I have nothing to
> acknowledge as I stated earlier, and will not acknowledge
> any wrong doing.  So with this being said, I will not
> remove myself in the system as a department manager.

*Id.* at 99:5-12, 99:20-100-1; *id.* Ex. 8.  In response to Crowley's question whether

Plaintiff was sure she wanted to submit the letter, Plaintiff responded yes.  *Id.* Ex. 7

at ANGEL000015.

        On May 23, 2007, Plaintiff attended a meeting with Co-Manager

Derek Gagne, Crowley, and Halsey, who attended via phone.  *Id.* at 97:8-12; *id.*

Ex. 7 at ANGEL000017.  Halsey had Plaintiff confirm that she still felt the same

way as described in her letter, and therefore told Crowley to provide Plaintiff

termination papers.  *Id.* at 77:23-78:6, 98:3-11; *id.* Ex. 7 at ANGEL000017-18.

Crowley informed Plaintiff that she was terminated effective May 23, 2007 for her

refusal to acknowledge the coaching and refusal to submit an action plan.  Crowley

Decl. ¶ 10; *id.* Ex. H.  The exit form recommended that Plaintiff could be rehired,

but she never sought re-employment.  *Id.* Ex. H, Horiuchi Decl. Def.'s Ex. A,

Angel Depo. 99:7-19.

///

///

**B.      Procedural Background**

On May 22, 2009, Plaintiff filed her Complaint in the First Circuit Court of the State of Hawaii, alleging claims labeled (1) tortious breach of employment contract (Count I), (2) violation of public policy (Count II), (3) breach of contract and declaratory relief (Count III), (4) negligent or intentional infliction of emotional distress (Count IV), (5) negligent or intentional interference with prospective economic advantage (Count V), and (6) retaliatory discharge (Count VI).  On August 7, 2009, Defendant removed this action to this court based on diversity jurisdiction.

On July 16, 2010, Defendant filed its Motion for Summary Judgment. On August 30, 2010, Plaintiff filed an Opposition, and Defendant filed a Reply on September 7, 2010.  A hearing was held on September 17, 2010.  During the hearing, Plaintiff's counsel stated that he did not have time to file an opposition with all of his arguments, and the court therefore granted Plaintiff until October 1, 2010 to file a Supplemental Opposition, with Defendant's Supplemental Reply due by October 8, 2010.  Plaintiff did not make any supplemental filings.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248).  When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor." (citations omitted)).

## IV. <u>DISCUSSION</u>

Defendant argues that summary judgment should be granted on all of

Plaintiff's claims because they are not cognizable as a matter of law and/or are not

supported by any evidence.  The court addresses each of Plaintiff's claims in turn.

## A.    **Tortious Breach of Contract (Count I)**

Defendant argues that summary judgment should be granted on

Plaintiff's claim for tortious breach of employment contract because no such claim

exists under Hawaii law.  The court agrees -- The Hawaii Supreme Court has held

that "Hawaii law does *not* recognize tortious breach of contract actions in the

employment context."  *Francis v. Lee Enters., Inc.*, 89 Haw. 234, 244, 971 P.2d

707, 717 (1999).

In opposition, Plaintiff argues that "Plaintiff's claim for tortious breach of employment contract underlying factual assertions [sic] sounds in both tortious and contract breach of employment contract, which exist under Hawaii law."  Pl.'s Opp'n ¶ 1.  While this statement is less than clear, to the extent Plaintiff is arguing that she is alleging a breach of contract claim, Plaintiff has already included such allegations in Count III of the Complaint for breach of contract.  The court therefore GRANTS Defendant's Motion for Summary Judgment on Count I of the Complaint.

## B.     Violation of Public Policy (Count II) and Retaliatory Discharge (Count VI)

Both Count II and Count VI of the Complaint appear to allege that Defendant violated public policy when it terminated Plaintiff after she wrote her letter to the editor criticizing Wal-Mart.  *See* Compl. ¶ 38 (alleging that Defendant discharged Plaintiff in violation of public policy), ¶ 48 (alleging that after Plaintiff's letter to the editor was published, "Defendant embarked on a course of harassing treatment of her in retaliation for her having expressed her opinions"); *see also Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 262, 842 P.2d 634, 646 (1992) (recognizing that a state law retaliatory discharge claim exists as "a common law tort of discharging an employee contrary to public policy").

14

Defendant argues that summary judgment should be granted on these claims because there was no violation of any clear mandate of public policy.  The court agrees.

In *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 380, 652 P.2d 625, 631 (1982), the Hawaii Supreme Court recognized the common law tort of wrongful discharge in violation of public policy, holding that an "employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy."  In order to determine "whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." *Parnar*, 65 Haw. at 380, 652 P.2d at 631; *see also Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 257, 865 P.2d 170, 173 (1994).

Plaintiff does not identify any statute as providing a statement of public policy that Defendant allegedly violated.  Further, while Plaintiff generally asserts that her termination violated "Hawaii public policy," Plaintiff fails to identify any particular public policy violated.[3]  Rather, the only source of public

---

[3] For example, courts have recognized as public policies "performing an important public obligation, such as jury duty, whistle blowing, or refusing to violate a professional code of ethics."  *Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 257, 865 P.2d 170, 174 (1994). Viewing the facts in a light most favorable to Plaintiff, her conduct does not fall within any of these categories.

policy Plaintiff identifies is the First and Fourteenth Amendments.  *See* Pl.'s Opp'n ¶ 2 (arguing that Defendant violated "[t]he First Amendment to the US [sic] Constitution, as well as, the 14th Amendment to the U.S. Constitution").  The First and Fourteenth Amendments are of no help to Plaintiff, however, because they apply to state actors only.  *See* U.S. Const. amend. XIV, § 1, cl. 2 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ."); *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."); *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (stating that the First Amendment "erects no shield against merely private conduct, however discriminatory or wrongful."); *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003) ("The United States Constitution protects individual rights only from *government* action, not from *private* action.").

Because Walmart is a private corporation, it did not contravene either the letter or intent of the First and Fourteenth Amendments.  The court therefore GRANTS Defendant's Motion for Summary Judgment as to Counts II and VI of the Complaint.

## C.      Breach of Contract (Count III)

Plaintiff asserts that her termination constituted a breach of her employment contract with Defendant.  Defendant argues that summary judgment should be granted on this claim because Plaintiff was an at-will employee and therefore terminable at any time with or without cause.  *See* Def.'s Mot. 22-23. Again, the court agrees.

In general, "in the absence of a written employment agreement, a collective bargaining agreement, or a statutorily-conferred right, employment is at-will," which means that employment is "terminable at the will of either party, for any reason or no reason at all."  *See Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 383, 14 P.3d 1049, 1064 (2000) (citation and quotation signals omitted).  Such at-will status may be modified, however, by "'statements contained in employee policy manuals or handbooks issued by employers to their employees.'"  *Id.* (quoting *Kinoshita v. Canadian Pacific Airlines, Ltd.*, 68 Haw. 594, 601, 724 P.2d 110, 115-16 (1986)).  Specifically, "if an employer issues policy statements or rules, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it."  *Id.* at 385, 14 P.3d at 1066; *see also Kinoshita*, 68 Haw. at 603, 724 P.2d at 117 (finding that cover letter stating that the policies were "an enforceable contract

17

between us under [the] labour law of the state in which you work.  Thus your rights

in your employment arrangement are guaranteed," created an employment

contract).

"To protect against claims of breach of implied contract based upon

employee handbooks, employers may use disclaimers expressly stating that the

handbook or manual is not a contract and does not alter the employment at-will

relationship." *Gonsalves v. Nissan Motor Corp. in Haw., Ltd.*, 100 Haw. 149, 166,

58 P.3d 1196, 1213 (2002) (citation and quotation signals omitted).  A disclaimer

is effective where: (1) it is clear, conspicuous and understandable, (2) does not

contradict the language in the manual at issue, and (3) does not contradict any

subsequent oral or written statements by the employer.  *Id.*

Plaintiff does not assert that she signed an employment agreement

with Wal-Mart or that Wal-Mart made any verbal promises, Horiuchi Decl. Ex. A,

Angel Depo. 139:17-140:8, -- indeed, her employment application contained a

clear disclaimer that her employment is at-will.  *Id.* Ex. 24.  Rather, Plaintiff asserts

that her termination was in violation of various Wal-Mart policies, including: (1)

the Open Door Communications policy, *id.* at 132:1-17; (2) the

Investigation/Suspension policy, *id.* at 129:1-25; (3) the Coaching for

Improvement policy, *id.* at 133:18-134:6; and (4) the Personnel Record policy.  *Id.*

18

at 133:3-15.

Plaintiff does not explain how these policies create an agreement between Plaintiff and Defendant, much less how these policies change Plaintiff's at-will status or specifically how Defendant violated these policies by terminating Plaintiff.  Setting aside these facial deficiencies, however, even if these policies were breached in some manner they would not change Plaintiff's at-will status because each one includes the following disclaimer language:

> This Policy does not create an express or implied contract of employment or any other contractual commitment. Wal-Mart may modify this Policy at its sole discretion without notice, at any time, consistent with applicable law.  Employment at Wal-Mart is on an at-will basis, which means that either Wal-Mart or the Associate is free to terminate the employment relationship at any time for any or no reason, consistent with applicable law.

*Id.* Ex. 15 at 4 of 4; *Id.* Ex. 16 at 4 of 4; Ex. 17 at 7 of 7; Crowley Decl. Ex. I at 2 of 2.

This disclaimer language is conspicuously placed in each policy and clear on its face that employment is at will.  Further, the court finds no (and Plaintiff points to no) language in any of these manuals or other documents that contradict this disclaimer language.  Indeed, throughout Plaintiff's employment Defendant reiterated, and Plaintiff acknowledged, that her employment was at-will. *See id.* Exs. 18, 22, 23.  Accordingly, the court finds that Wal-Mart's disclaimers in

the policies were valid and that the policies did not modify Defendant's right to discharge employees or otherwise create a contract for employment.[4]  *See Gonsalves*, 100 Haw. at 169-70, 58 P.3d at 1216-17.  The court therefore GRANTS Defendant's Motion for Summary Judgment on Count III of the Complaint.

## D.    Negligent Infliction of Emotional Distress ("NIED") (Count IV)

Defendant argues, among other things,[5] that summary judgment should be granted on Plaintiff's NIED claim because it is barred by the Hawaii Workers' Compensation Act, which provides a remedy to an employee who "suffers personal injury . . . by accident arising out of and in the course of the employment . . . proximately caused by or resulting from the nature of the employment."  Hawaii Revised Statutes ("HRS") § 386-3(a).  This remedy is exclusive, excluding claims that otherwise encompass this conduct.  Specifically, HRS § 386-5 provides:

> The rights and remedies herein granted [in the workers' compensation statute] to an employee or the employee's

---

[4]  Because the court finds that none of the policies identified by Plaintiff creates an enforceable contract, the court need not address whether Defendant violated any of them.

[5]  Defendant also argues that Plaintiff has presented no evidence of physical injury, which is a necessary element of an NIED claim.  *See Doe Parents No. 1 v. Dep't of Educ.*, 100 Haw. 34, 69-70, 58 P.3d 545, 580-81 (2002) (stating that to maintain an NIED claim, a person must generally allege "that *someone* was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else"); *Kaho'ohanohano v. Dep't of Human Serv.*, 117 Haw. 262, 306-07, 178 P.3d 538, 582-83 (2008).  The court agrees that the lack of any evidence of physical injury is further basis to grant summary judgment on this claim.

20

> dependents on account of a work injury suffered by the
> employee shall exclude all other liability of the employer
> to the employee . . . on account of the injury, except for
> sexual harassment or sexual assault and infliction of
> emotional distress or invasion of privacy related thereto,
> in which case a civil action may also be brought.

Courts have interpreted this exclusivity language to bar all work-related claims based on negligence, including claims for NIED, except for a claim based on sexual assault or sexual harassment. *See Abbatiello v. County of Kauai*, 2007 WL 473680, at *14-15 (D. Haw. Feb. 7, 2007); *Black v. City & County of Honolulu*, 112 F. Supp. 2d 1041, 1048 (D. Haw. 2000) ("[N]egligence claims 'premised on sexual harassment or sexual assault in an employment context' are exempt from the bar of Hawaii's workers' compensation statute."); *Nelson v. Univ. of Haw.*, 97 Haw. 376, 393, 38 P.3d 95, 114 (2001) ("[W]e conclude that the exclusive remedy provision of the workers' compensation law does not bar claims for NIED related to sexual harassment."). Because Plaintiff is not asserting that she was sexually harassed, Plaintiff's NIED claim is barred by the exclusivity provision of the Hawaii Workers' Compensation Act. The court GRANTS Defendant's Motion as to Plaintiff's NIED claim.

**E.    Intentional Infliction of Emotional Distress ("IIED") (Count IV)**

Defendant asserts that there is no outrageous conduct sufficient to support Plaintiff's IIED claim. The court first outlines the framework for IIED

claims, and then applies the framework to Defendant's actions.

> a.     Framework

"The elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003) (adopting IIED standard from Restatement (Second) of Torts). The Restatement describes what constitutes "outrageous" conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. (1965). "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Nagata v. Quest Diagnostics Inc.*, 303 F. Supp. 2d 1121, 1127

22

(D. Haw. 2004) (citing *Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 387, 14 P.3d 1049, 1068 (2000)).

Hawaii "courts have generally been reluctant to define conduct as outrageous." *Id.* (citing *Shoppe*, 94 Haw. at 387, 14 P.3d at 1068 (finding that abusive verbal attacks by an employer directed at an employee did not rise to the level of outrageous conduct as a matter of law)); *Keiter v. Penn Mut. Ins. Co.*, 900 F. Supp. 1339, 1348 (D. Haw. 1995) (finding that the defendant's conduct which resulted in a significant increase in the premium payment on plaintiff's life insurance policy was not outrageous conduct as a matter of law); *Lapinad v. Pac. Oldsmobile-GMC, Inc.*, 679 F. Supp. 991, 996 (D. Haw. 1988) (stating that an employer must have engaged in conduct beyond merely firing an employee for unfair reasons in order for the conduct to possibly be considered outrageous).

An IIED claim cannot be sustained by "threats, annoyances, petty oppressions, or other trivialities." *Young v. Allstate Ins. Co.*, 119 Haw. 403, 425, 198 P.3d 666, 688 (2008) (quoting Restatement (Second) of Torts § 46 cmt. d); *see also Bragalone v. Kona Coast Resort Joint Venture*, 866 F. Supp. 1285, 1294 (D. Haw. 1994).  Indeed, a plaintiff "must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d.

With that said, however, "sexually harassing behavior, racial slurs, and accusations of criminal conduct could all possibly be considered outrageous conduct," *see Nagata*, 303 F. Supp. 2d at 1128 (citing *Lapinad*, 679 F. Supp. at 996), and conduct that does not fit into any of these categories may still raise a question of fact. *Cf. id.* (determining that defendant's delay in disclosing error in drug test could be considered outrageous).

> b.   Application

Construed in the light most favorable to Plaintiff, the facts simply do not support that Defendant's conduct was outrageous. As explained above, Plaintiff has failed to raise a genuine issue of material fact that her termination violated any employment agreement or any public policy, or that she has any other colorable claim that survives summary judgment. Further, to the extent that Plaintiff could bring a stand-alone IIED claim in the employment context,[6] the facts of her termination simply do not support that Defendant acted outrageously.

Defendant presented evidence establishing that Crowley and Halsey decided to terminate Plaintiff after they found that she violated Wal-Mart's Open Door Policy, refused to acknowledge her violation, and refused to follow their instructions. That Plaintiff apparently disagrees with Crowley's interpretations of

---

[6]  The court need not determine whether a plaintiff can state a stand-alone IIED claim in the employment context.

the Open Door Policy and has asserted that she did not violate any Wal-Mart policies, *see* Horiuchi Decl. Angel Depo. Ex. 3, does not suggest that Halsey and Crowley fabricated this violation or otherwise maliciously terminated her.  Further, while Plaintiff asserts that Crowley had a "smerk on his face" during one of their meetings, and that Halsey was "cocky," used a harsh tone, raised his voice, and "bashed" her character "to the point of being belligerent," *id.* at 90:16-91:9; *see also id.* Ex. 3 at ANGEL000057, Def.'s Reply Horiuchi Decl. Ex. A-1, Angel Depo. 90:9-15, unkind behavior and yelling does not support a finding of outrageous conduct.  *See* Restatement (Second) of Torts § 46 cmt. d; *Young*, 119 Haw. at 425, 198 P.3d at 688; *Shoppe*, 94 Haw. at 387, 14 P.3d at 1068 (finding that verbal attacks did not rise to the level of outrageous conduct as a matter of law).

In opposition, Plaintiff fails to present any evidence whatsoever, much less any evidence from which the court could infer that Defendant's conduct was outrageous.  To the extent Plaintiff could potentially argue that her termination was outrageous because it was in retaliation for her letter to the editor criticizing Wal-Mart, the facts presented do not support such inference.  While this letter was published less than three months before she was terminated, this proximity in time standing alone is insufficient to support that Plaintiff was terminated in retaliation for this letter.  *See Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003)

("Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances.  In some cases, the totality of the facts may form such a clear picture that a district court would be justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive . . . .").

Rather, upon consideration of the surrounding circumstances, the evidence presented establishes that separate from Plaintiff's letter to the editor, Halsey and Crowley believed that Plaintiff violated Defendant's Open Door policy and terminated her when she refused admit her actions and develop an action plan. As described above, Plaintiff's termination did not breach any contract and Plaintiff was an at-will employee, allowing Defendant to terminate her "for any reason or no reason at all."  *See Shoppe*, 94 Haw. at 383, 14 P.3d at 1064.  Because Plaintiff has failed to present any evidence from which the court can infer that Defendant acted outrageously, the court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's IIED claim.

## F.     Interference with Economic Advantage (Count V)

"The tort of tortious interference with prospective economic advantage requires that the plaintiff prove that a valid business relationship or prospective advantage or expectancy existed between the plaintiff and a third party such that

there is a 'reasonable probability of it maturing into a future economic benefit to the plaintiff.'" *Mroz v. Hoaloha Na Eha, Inc.*, 410 F. Supp. 2d 919, 937 (D. Haw. 2005) (quoting *Miracle v. New Yorker Magazine*, 190 F. Supp. 2d 1192, 1203 (D. Haw. 2001)).  Defendant argues that summary judgment must be granted on Plaintiff's claim for intentional interference with prospective business advantage because there is no evidence that Defendant interfered with any economic relationship or opportunity between Plaintiff and a third party.  Indeed, Plaintiff testified that there was no such interference.  *See* Horiuchi Decl. Ex. A, Angel Depo. 148:5-149:14.  The court therefore GRANTS Defendant's Motion for Summary Judgment on Count V.

### G.   Punitive Damages

A request for punitive damages is not a stand-alone claim, but rather derivative of Plaintiff's other claims.  *See Kang v. Harrington*, 59 Haw. 652, 660, 587 P.2d 285, 291 (1978) ("An award of punitive damages is purely incidental to the cause of action."); *see also Lee v. Aiu*, 85 Haw. 19, 34, 936 P.2d 655, 670 (1997) (holding record contained substantial evidence that defendants engaged in "aggravated or outrageous misconduct" required to impose punitive damages where IIED claim also stood).  Because the court finds that none of Plaintiff's claims survives summary judgment, the court GRANTS Defendant's Motion for Summary

Judgment on Plaintiff's incidental claim for punitive damages.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS Defendant's Motion for

Summary Judgment.  Because no claims remain, the Clerk of Court is directed to

close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 6, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Angel v. Wal-Mart Stores, Inc.*, Civ. No. 09-00361 JMS/KSC, Order Granting Defendant Wal-Mart
Stores, Inc.'s Motion for Summary Judgment at to Counts I-VI